IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 15-cv-00269-CMA-NYW

NATHAN W. LYON, on behalf of himself
and others similarly situated,

    Plaintiff,

v.

FIRST CHOICE LOAN SERVICES, INC.,
    a New Jersey Corporation,
FIRST CHOICE BANK,

    Defendants.

---

**ORDER GRANTING MOTION TO TRANSFER VENUE**

---

    In this employment case, Plaintiff Nathan Lyon alleges that Defendants First Choice Loan Services, Inc., and First Choice Bank ("Defendants") failed to pay overtime compensation due to their loan officers, in violation of Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201 *et seq*. (Doc. # 1.) Defendants moved to transfer venue pursuant to 28 U.S.C. § 1404(a). (Doc. # 16-1.) Plaintiff opposes this relief. (Doc. # 21.) For the reasons that follow, the instant Motion is granted.

    **I. BACKGROUND**

    On or about November 29, 2011, Lyon signed a "Full Time Loan Officer Employment Agreement" ("Employment Agreement" or "the Agreement") with

Defendant First Choice Loan Services, Inc. ("FCLS"). (Doc. # 16-1 at 14.) The Employment Agreement provides, in relevant part, as follows:

> **This Agreement is made and entered into in the State of New Jersey and shall in all respects be interpreted, enforced, and governed by and in accordance with the laws of the State of New Jersey.** In the event that the parties cannot resolve a dispute by the ADR (Alternative Dispute Resolution) provisions contained herein, **any dispute between the parties concerning the wages, hours,** working conditions, terms, rights, responsibilities or obligations between them or arising out of their employment relationship **shall be resolved through binding arbitration** in accordance with the rules of the American Arbitration Association applicable to employment claims. Such arbitration may not be joined with or join or include any claims by any persons not party to this Agreement. The parties will share equally in the cost of such Arbitration and, except as otherwise set forth herein, be responsible for their own attorneys' fees, provided that if the Arbitration is brought pursuant to any statutory claim for which attorneys fees were expressly recoverable, the Arbitrator shall award such attorneys, fees and costs consistent with the statute at issue. Nothing herein shall preclude a party from seeking temporary injunctive relief in a court of competent jurisdiction to prevent irreparable harm, pending any ruling obtained through Arbitration. Further, nothing herein shall preclude or limit Employee from filing any complaint or charge with a State, Federal, or County agency. **By execution of this Agreement, the parties are consenting to personal jurisdiction and venue in New Jersey with respect to matters concerning the employment relationship between them.**

(Doc. # 16-1 at 20-21) (emphasis added). The Agreement also contains provisions for employee's salaries, maximum working hours, and overtime pay. (*Id.* at 15.) Although there is a blank space for a signature from "First Choice Loan Services," the document is not signed. (*Id.* at 21.)

Defendant First Choice Bank ("the Bank") is a California corporation, with a principal place of business in the State of New Jersey. (Doc. ## 1. ¶ 2; 16-1 at 2.) The Bank has six branches in the state of New Jersey and two branches in the Commonwealth of Pennsylvania. (Doc. # 16-1 at 2.) It has never had any

2

offices or employed any individuals in the state of Colorado, and the majority of the Bank's upper management and corporate documentation are located in New Jersey. (*Id.*) First Choice Loan Services ("FCLS") is a New Jersey corporation, with its principal place of business in New Jersey. (Doc. ## 1, ¶ 3; 16-1 at 2.) The bulk of FLCS' business operations take place in New Jersey, and its human resources department is also located in New Jersey. (Doc. # 16-1 at 2.)

Lyon's Complaint alleges that he worked as a loan officer at FCLS' office located in Morganville, New Jersey, from approximately November 2011 through May 2012. (Doc. # 1 at 3.) He worked for Defendants again, from approximately February 2013 to August of 2013, at Defendants' office located in the Denver, Colorado area. (*Id.*) He is currently a resident of Arizona.[1] According to Defendants, First Choice Loan Services "did maintain a branch located in Denver, Colorado, on or about September 27, 2011, but has since shut down this branch." (Doc. # 15-1 at 4, n. 4). Defendants do not provide the specific date on which the branch office closed, but did note that "the last loan originating from this branch closed on or about October 13, 2014." (*Id.*)

Ten other Plaintiffs have opted in to this case; they reside in a handful of states, including one in Florida, one in Texas, one in Alabama, two in Maryland, and five in Arizona. (Doc. ## 2, 6, 8-12, 14-15, 19). None are from Colorado.

---

[1] Plaintiff's Response states that "On or about March 2014, Plaintiff moved to Arizona on a temporary basis to get help with his children from family. He and his family rented a house there. But, Plaintiff still worked at home in Arizona through the Colorado office. This including getting all his leads from that office and he continued to report to his supervisors there . . . . Plaintiff maintains ownership of a residence located [in] . . . Castle Rock, Colorado with all intentions of returning Plaintiff to his home. He will be returning to his residence in Colorado in June 2015." (Doc. # 21 at 2.)

## II. ANALYSIS

"Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' . . . the clause may be enforced through a motion to transfer under [28 U.S.C.] § 1404(a)." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013). 28 U.S.C. § 1404(a) permits a district court to "transfer any civil action to any other district where it might have been brought" for the "convenience of the parties and witnesses, in the interest of justice."

The existence of a mandatory forum-selection clause, however, changes the Court's usual analytical "calculus" under 28 U.S.C. § 1404(a); specifically, "a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine,* 134 S. Ct. at 581 (internal citation omitted). In the ordinary case, the Court balances various criteria in assessing whether a case should be transferred, including "private interest factors," which look to the convenience of the litigants, and "public interest factors," which look to the convenience of a particular forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).[2] However, when a

---

[2] These criteria include, but are not limited to:

> [1] the plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court

4

forum selection clause is invoked in favor of transfer, "[o]nly under extraordinary circumstances **unrelated to the convenience of the parties** should a § 1404(a) motion be denied." *Atl. Marine,* 134 S. Ct. at 581 (emphasis added). For example, although a Plaintiff's choice of forum is ordinarily afforded great weight in the 28 U.S.C. § 1404(a) analysis, in the face of a forum-selection clause, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Additionally, the Court may no longer consider arguments relating to the parties' private interests, including the convenience of witnesses, because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* Concomitantly, the Court is limited to consideration of the public-interest factors only, including the administrative difficulties flowing from court congestion and the local interest in having localized controversies decided at home. *Id.* at 581 n.6.[3]

The United States Supreme Court has held that a mandatory forum selection clause is "prima facie valid" and should be enforced, unless the party

---

determine questions of local law; and, [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit*, 928 F.2d at 1516.

[3] The last "public interest" factor that is relevant to forum-selection cases, the interest in having the trial of a diversity case in a forum that is at home with the law, is not applicable here.

challenging the clause can show that such enforcement would be "unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 9, 15 (1972). To overcome the presumption that a forum selection clause is valid, a party bears a "heavy burden" and must show that 1) enforcement would be unreasonable and unjust; 2) the clause is invalid because of fraud or overreaching; or 3) enforcement would contravene a strong public policy of the forum in which suit is brought. *Id.*; see also *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992) (noting that a party must make "a showing of inconvenience so serious as to foreclose a remedy, perhaps coupled with a showing of bad faith, overreaching or lack of notice.")

### III.  DISCUSSION

Plaintiff does not argue that enforcement of the forum-selection clause is invalid because of fraud or overreaching, or that the forum-selection clause contravenes a strong public policy of this Colorado forum. However, he does argue – at least implicitly – that its enforcement would be "unreasonable or unjust" for two reasons. First, although Plaintiff signed the Employment Agreement, it was not executed by Defendants; as such, "the parties – including Plaintiff – are not legally bound by its terms," including the forum-selection clause. (Doc. # 21 at 5.) Second, Plaintiff argues that the forum-selection clause is not applicable in this case because "Plaintiff is not bringing a breach of

6

contract regarding the loan officer employment agreement." (*Id.*)  The Court disagrees, and addresses each of these arguments in turn.

As a preliminary matter, because the Employment Agreement provides that it "shall in all respects be interpreted, enforced, and governed by and in accordance with the laws of the State of New Jersey" (Doc. # 16-1 at 20), the Court will apply New Jersey state law in determining whether the Agreement was enforceable.

### A.  The Agreement Is Enforceable, Despite Being Unsigned By FCLS

Without citing legal authority, Plaintiff asserts that the Employment Agreement is not enforceable because it was not signed by a representative from FCLS.  (Doc. # 21 at 5.)  However, "[u]nless required by the Statute of Frauds, N.J.S.A. 25:1-5 to -16, or as otherwise provided by law, contracts do not need to be in writing to be enforceable."  *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1106 (N.J. 2003).  Rather, "[b]ecause the offeree's action naturally indicates assent . . . where an offeree signs a document [he] is generally held to be bound by the document's terms."  *Jermax, Inc. v. Baosteel Am., Inc.*, 2009 WL 4547576, at *3 (N.J. Super. Ct. App. Div. Dec. 4, 2009) (quoting Williston on Contracts § 6:44 (4th ed. 2007)).  Plaintiff accepted FCLS' offer both by signing the Employment Agreement and by beginning his employment as an at-will employee of FCLS.  In exchange for his employment, he agreed to the terms of the Agreement, including the mandatory forum-selection clause.  Indeed, not only was the Employment Agreement signed by the party to be charged – here, Plaintiff – but

it was authored by FCLS, and FCLS' conduct evinces an intent to be bound by its terms when it filed the instant Motion.

Although Plaintiff points to language appearing at the end of the Employment Agreement (immediately above the signature lines) which states that "IN WITNESS WHEREOF and intending to be legally bound hereby, the parties have read, understood, and executed this Agreement the day and year above written," this language does not state that a signature of both parties is **required** for the Agreement to be enforceable, nor does language to this effect appear elsewhere in the Agreement. (Doc. # 16-1 at 21.) As such, the lack of a signature from FCLS does not render this agreement unenforceable.

**B.  The Agreement Encompasses Plaintiff's Claims**

Plaintiff further argues that the forum-selection clause, and, indeed, the entire Employment Agreement, is inapplicable to his FLSA claim, because that claim pertains not to a breach of the Agreement, but to his allegations that Defendants failed to pay him overtime wages. (Doc. # 16-1 at 6.) In support of this argument, Plaintiff cites *Perry v. Nat'l City Mortgage, Inc.*, No. 05CV891 DRH, 2006 WL 2375015, at *4 (S.D. Ill. Aug. 15, 2006), in which a district court determined that a forum-selection clause in an employment agreement applied to disputes regarding the terms the agreement itself, not to disputes beyond it, such as the plaintiff's FLSA claims.

Not only was *Perry* decided in 2006 – before the United States Supreme Court's emphatic determination in *Atlantic Marine Construction Company*, 134 S.

Ct. at 579, that "proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases'" – it is also readily distinguishable from the case at bar. In *Perry*, Plaintiff was not resisting an attempted change of venue under the forum-selection clause. 2006 WL 2375015, at *4. In any case, the forum-selection clause there read: "This Agreement shall be governed by . . . the laws of the State of Ohio. Employee agrees to submit to, and confer exclusive jurisdiction on . . . Montgomery County, Ohio." *Id.* That court specifically noted that "Defendant could have included language stating, 'Employee agrees to submit to the exclusive jurisdiction of the State of Ohio for any and all claims regarding this Agreement or his employment in general,' in order to for it to apply to the instant suit." *Id.* In the instant case, the plain language of the Agreement explicitly provides that disputes relating to "wages, hours, working conditions, terms, rights, responsibilities or obligations between them or arising out of their employment relationship" are subject to binding arbitration. (Doc. # 16-1 at 20.) Moreover, the Agreement contains explicit provisions relating to Plaintiff's compensation, including his overtime compensation. Accordingly, Plaintiff's claims are clearly encompassed by the Agreement, and the forum-selection clause applies.

## C.  The "Public Interest" Factors Weigh in Favor of Transfer

Although Plaintiff makes a variety of arguments regarding his own choice of forum, the convenience of witnesses, the costs of proof, and the enforceability of judgments (*see* Doc. # 21 at 7-12), it is clear that this Court is precluded from

consideration of these factors per *Atl. Marine,* 134 S. Ct. at 581. The Supreme Court explained its rationale in deciding that the trial court "must deem the private-interest factors to weigh entirely in favor of the preselected forum," as follows:

> When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum. As we have explained in a different but "'instructive'" context, "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting."

*Id.* As such, the Court is limited to discussion of the "public interest" factors, bearing in mind the Supreme Court's admonition that "[i]n all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Id.* at 583.

First, with regard to purported administrative difficulties flowing from court congestion, Plaintiff argues that Colorado's docket is relatively less congested than New Jersey's, because the District of Colorado docketed 2,658 civil cases in 2014 (with a median disposition time of 6.8 months), whereas the District of New Jersey docketed 6,766 civil cases in 2014 (with a median disposition time of 7.5 months). Although there are clearly more cases on the New Jersey docket, the median time from filing to disposition is very close between the respective forums (within 1.3 months); as such, this factor does not weigh against transfer. Second, with regard to the local interest in having localized controversies decided at home, this factor does weigh in favor of transfer, because the

10

Employment Agreement explicitly provides that the laws of the State of New Jersey shall apply to this dispute.

## IV. **CONCLUSION**

For the foregoing reasons, Plaintiff has failed to carry his burden to show that the forum-selection clause should not be enforced in this matter. Accordingly, it is ORDERED that Defendant's Motion to Transfer Venue (Doc. # 16) is GRANTED. It is

FURTHER ORDERED THAT this action be transferred to the District of New Jersey for further prosecution and adjudication.

DATED: June 29, 2015

BY THE COURT:

*[signature]*

_____
CHRISTINE M. ARGUELLO
United States District Judge